**Carl FRANZEN, Plaintiff**

v.

**Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.**

**Civil No. SA–06–CA–903–XR.**

United States District Court, W.D. Texas, San Antonio Division.

Jan. 11, 2008.

---

Cynthia Ellis Rosen, Heard & Smith, LLP, San Antonio, TX, for Plaintiff.

Harold E. Brown, Jr., Assistant U.S. Attorney, San Antonio, TX, for Defendant.

## ORDER

XAVIER RODRIGUEZ, District Judge.

Plaintiff timely filed his objections to the Magistrate Judge's Report and Recommendation affirming the Commissioner's finding that Plaintiff is not disabled. Having reviewed the Report and Recommendation, Plaintiff's objections, the underlying case record, and the applicable law, the Court **AFFIRMS** the Commissioner's decision to deny benefits and **DENIES** Plaintiff's motion for remand. Judgment is entered for Defendant and against Plaintiff, each side to bear its own costs.

## I. PROCEDURAL BACKGROUND

On April 20, 2004, Plaintiff filed an application for Disability Insurance Benefits, alleging he became disabled in 2001. The Social Security Administration denied him benefits initially and on reconsideration.

On May 10, 2006, an Administrative Law Judge (ALJ) issued an order denying Plaintiff his requested benefits, finding he could still perform work that existed in significant quantities in the national economy.

Plaintiff sought review of the ALJ's decision from the Appeal Council, which con-

cluded that no basis existed to review the ALJ's decision. Thus, on May 10, 2006, the ALJ's determination became the final decision of the Commissioner. Plaintiff appealed that decision to this Court, which referred the matter to the Magistrate Judge for a Report and Recommendation (R & R). Having found the R & R adverse to his position, Plaintiff filed objections with this Court, which are addressed below.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision to deny disability benefits is limited to a determination of whether (1) the decision is supported by the evidence, and (2) the Commissioner applied the proper legal standards in evaluating the evidence.[1] If the Commissioner's findings are supported by substantial evidence, the determination must be affirmed.[2] Evidence is considered substantial if it is more than a scintilla, less than a preponderance, and if a reasonable mind might accept it as adequate to support a conclusion.[3] A rejection of the Commissioner's finding is appropriate only if no credible choices or contrary medical evidence exists.[4]

█ The Court does not re-weigh the evidence, try the issues *de novo*, or substitute its judgement for the Commissioner's.[5] Any conflict in the evidence is for the Commissioner to resolve.[6] In determining whether substantial evidence supports the Commissioner's determination, the following four elements of proof are weighed: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[7]

## III. LEGAL FRAMEWORK OF THE SOCIAL SECURITY ACT

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[8] A person shall be determined to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[9]

To determine if a claimant qualifies as disabled under the Social Security Act, the Commissioner makes the following sequential inquiry: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have a severe impairment; (3)

1. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

2. *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988).

3. *Boyd,* 239 F.3d at 704.

4. *Abshire,* 848 F.2d at 640.

5. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000).

6. *Id.*

7. *Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir.1995).

8. 42 U.S.C. § 423(d)(1)(A).

9. 42 U.S.C. § 423(d)(2)(A).

does the impairment meet or equal an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) does the impairment prevent the claimant from doing past relevant work; and (5) does the impairment prevent the claimant from doing any other work.[10] The claimant bears the burden of proving the first four requirements. If the claimant establishes these elements, the burden then shifts to the Commissioner to prove that the impairment does not prevent the claimant from performing other jobs.[11] If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work.[12]

## IV. PLAINTIFF'S OBJECTIONS

Plaintiff lodged three distinct objections to the Magistrate's R & R, being: (1) the ALJ did not apply the proper legal standard in determining Plaintiff's Carpal Tunnel Syndrome ("CTS") was not a severe impediment, and that the ALJ failed to consider the effects of CTS on Plaintiff's residual functional capacity ("RFC"); (2) the ALJ erred by rejecting a treating physician's opinion without applying the proper standard; and (3) the ALJ applied an incorrect legal standard when evaluating Plaintiff's credibility.[13] Each objection will be addressed below.

### A. ALJ's determinations concerning CTS and alleged effects on Plaintiff's RFC

Plaintiff's main argument concerning the evidence purporting to show Plaintiff suffered from CTS centers around the ALJ's apparent disregard of medical records from 2001.[14] Plaintiff takes issue with the Magistrate Judge's R & R stating that the ALJ is given the discretion to refuse to evaluate medical records from "a time significantly prior to when plaintiff protectively filed for benefits", because such records are irrelevant.[15] The ALJ is required to "develop [plaintiff's] complete medical history for *at least* the 12 months preceding the month in which [plaintiff] file[s][his] application unless there is a reason to believe that development of an earlier period is necessary . . . ." [16] This section of the C.F.R. grants the ALJ discretion to determine whether to develop a medical history beyond the minimum twelve months. Also, this section establishes the starting point for the compilation of medical history as being the date of filing of an application for benefits. Plaintiff asserts "[m]edical evidence that relates to the period after the Plaintiff's alleged onset date of disability is necessarily relevant to the determination of whether a claimant is disabled for purposes of the Social Security Act." [17] Plaintiff misinterprets the *Ivy* case. In *Ivy*, the Court of Appeals stated that the claimant's statement regarding the onset of the alleged disability is to be used to determine the *date of disability*.[18] The Court of Appeals, however, does not address whether the claimant's statement determines the date for compiling medical history, as Plaintiff suggests. That date is set by the C.F.R. as the date of filing an application for benefits.[19]

---

10. 20 C.F.R. §§ 404.1520, 416.920.

11. *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir.1999).

12. *Id.*

13. Docket No. 20.

14. *Id.* at 1.

15. *Id.* (quoting Docket No. 14 at 20).

16. 20 C.F.R. § 1512(d) (emphasis added).

17. Docket No. 20 at 2 (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990)).

18. See *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990).

19. 20 C.F.R. § 1512(d).

■ Even if the ALJ was obligated to evaluate medical evidence from a time period of three years before the date of filing, the evidence Plaintiff cites does not contradict the Magistrate Judge's finding that "the record contains no medical evidence showing specific functional limitations resulting from carpal tunnel syndrome."[20] Plaintiff argues that medical records indicate he suffered limitations as a result of CTS.[21] However, the evidence cited fails to adequately controvert the ALJ's determination. Specifically, Plaintiff proffers three pieces of evidence to support his claim he suffered functional limitations as a direct result of CTS.[22] The first of these is the report of Dr. Paul T. Geibel, dated September 13, 2001, which provides a history of Plaintiff's present illness stating Plaintiff has "neck pain into his arms with numbness and tingling."[23] This report further gives a clinical impression "[ruling] out underlying carpal tunnel syndrome."[24] The second piece of evidence is a report by Dr. Bill D. Davis, dated October 21, 2001, which notes "numbness and tingling of both hands."[25] This alone does not indicate the source of the tingling and numbness, but the report continues to give an impression that there is "evidence of an entrapment neuropathy of both median nerves at the wrist consistent with carpal tunnel syndrome."[26] Lastly, Plaintiff offers a medical note dated October 28, 2002, reflecting a message from Plaintiff complaining of pain in both shoulders and his right elbow.[27] Never-theless, despite considering these three pieces of evidence, the ALJ found substantial evidence to the contrary supporting a denial of benefits.

Accordingly, Plaintiff's assertion that the ALJ failed to consider CTS as part of her assessment of Plaintiff's RFC is untenable. The evidence merely reflects subjective complaints of pain in areas where CTS may cause pain, but none of the evidence affirmatively states the pain is specifically caused by CTS, or, more importantly, how such pain results in specific functional limitations. In sum, substantial evidence does not exist contradicting the ALJ's conclusions concerning Plaintiff's alleged CTS.

## B. ALJ's rejection of treating physician's opinion

■ Plaintiff argues the ALJ erred in her rejection of Dr. Swann's opinion concerning Plaintiff's disability status by failing to engage in the analysis set forth by the Fifth Circuit Court of Appeals in *Newton v. Apfel*[28] and by the Code of Federal Regulations.[29] *Newton* requires the ALJ to conduct a six-factor analysis before rejecting a claimant's treating physician's opinion.[30] However, the ALJ may give little weight, or completely reject a treating physician's opinion when there is reliable medical evidence from a treating or examining physician that controverts the treating specialist's opinion.[31] Essentially, an ALJ may disregard or assign little weight to the testimony of a treating physician if contrary and reliable medical evi-

20. Docket No. 14 at 20.

21. Docket No. 20 at 2.

22. *Id.*

23. Transcript at 127.

24. *Id.* at 128.

25. Transcript at 106.

26. *Id.*

27. Transcript at 245.

28. Docket No. 20 at 3.

29. 20 C.F.R. § 404.1527(d).

30. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir.2000).

31. *Id.* at 453.

dence exists; only if none exists must the ALJ undergo a six-factor analysis to determine what, if any, weight to be given to the treating physician's opinion.

Plaintiff argues the ALJ failed to comply with the *Newton* requirements by not pointing out "competing first-hand medical evidence or a contrary medical opinion . . . ." before giving little or no weight to Plaintiff's treating physician's opinions.[32] It does appear, however, that the ALJ explicitly noted the presence of contrary medical evidence which she deemed credible, thus obviating the need to conduct the *Newton* six factor analysis.[33] The evidence cited by the ALJ includes records from Dr. Swann's own examinations, the Plaintiff's statements regarding his daily activities, opinions of the State Agency medical consultants, Dr. Leong's testimony, and medical records from Dr. Pete Nguyen.[34] Accordingly, it appears the ALJ performed a review of the pertinent medical evidence and properly exercised her discretion in giving little or no weight to the testimony of Plaintiff's treating physician, Dr. Swann, and in doing so, eliminated the need for the six-factor analysis found in the C.F.R.

### C. ALJ's determination of Plaintiff's credibility

Plaintiff's final argument revolves around the ALJ's evaluation of Plaintiff's credibility.[35] Plaintiff correctly articulates the two-part analysis regarding the ALJ's evaluation of symptoms in that the ALJ must first determine whether there is an impairment which could reasonably cause the claimant's pain, and if one is found, the ALJ must then evaluate how, if at all, the impairment limits the claimant's ability to work.[36]

As part of the second prong analysis, the ALJ may consider all the record, including the claimant's own statements, to determine whether there is substantiating evidence regarding the alleged intensity of pain and functional limitations.[37] If the ALJ finds that the individual's statements concerning his level of pain and symptoms are unsubstantiated by the record, an inquiry into the claimant's credibility is necessary.[38] As part of this inquiry into the individual's statements, the ALJ may look to the entire record, including the claimant's "own statements about the symptoms, any statements and other information provided by treating or examining physicians . . . and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."[39] "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled."[40] Clearly the ALJ is the proper person to determine claimant's credibility concerning statements made in regards to subjective pain observations. The ALJ's credibility determinations should be given judicial deference if such a determination is "supported by substantial record evidence."[41]

---

32. Docket No. 20 at 4.

33. Transcript at 20.

34. *Id.*

35. Docket No. 20 at 4.

36. *Id.* at 5 (citing SSR 96–7p, 1996 WL 374186 at *2).

37. SSR 96–7p, 1996 WL 374186 at *2.

38. *Id.*

39. *Id.*

40. *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir.1983) (citing *Laffoon v. Califano*, 558 F.2d 253, 255 (5th Cir.1977)).

41. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990).

It cannot be found that the ALJ failed to comply with her duties to consider both the subjective and objective evidence concerning Plaintiff's intensity, duration, or limiting effect of his pain. The ALJ's report details the objective medical evidence and statements which contradict Plaintiff's allegations as to the effect and intensity of his pain.[42] Bearing in mind the deference afforded the ALJ with regards to determinations of credibility, this Court does not find that the ALJ's decisions are not based on substantial evidence.

### D. Conclusion

In the Fifth Circuit, an ALJ is under no duty to enumerate all evidence in support of, or all evidence contrary to, her decision.[43] Because the ALJ's decision is based upon substantial evidence and was derived according to correct legal principles, this Court is not at liberty to substitute its own judgment regarding the weight of and conflicts in the evidence.[44]

Accordingly, the Commissioner's decision is **AFFIRMED;** Plaintiff's motion for remand[45] is **DENIED;** and judgment is entered for Defendant and against Plaintiff, each side to bear its own costs.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

PAMELA A. MATHY, United States Magistrate Judge.

**TO: Xavier Rodriguez United States District Judge**

Pursuant to the informal referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) and (h) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

The Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

### II. PROCEDURAL HISTORY

This is an action to review a decision of the Commissioner of Health and Human Services under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Carl Franzen ("Mr. Franzen" or "plaintiff"), initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Michael J. Astrue, the Commissioner of the Social Security Administration ("SSA"), that plaintiff is not disabled, and, therefore, not entitled to receive Supplemental Security Income ("SSI") benefits or Disability Insurance Benefits. Plaintiff filed an application for Title II Disability Insurance Benefits on April 20, 2004, alleging disability since May 15, 2001.[1] The Social Security Administration denied benefits initially[2] and on reconsideration.[3] On January 25, 2006, an administrative law judge

---

**42.** Transcript at 17–22.

**43.** *James J. Flanagan Stevedores, Inc. v. Gallagher,* 219 F.3d 426, 430 (5th Cir.2000) (noting that the 5th Circuit has expressly rejected the 3rd Circuit's requirement of strict disclosure of evidence used to make certain Social Security benefits decisions).

**44.** *Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir.1987).

**45.** Docket No. 9 at 15.

**1.** Transcript at 15 and 59–61. The ALJ noted that plaintiff, through his counsel, amended the alleged onset date of disability at the hearing to August 6, 2001. *Id.*

**2.** *Id.* at 28–32.

**3.** *Id.* at 35–38.

("ALJ") held a hearing, at which plaintiff was represented by an attorney, and considered plaintiff's claims *de novo*.[4] The ALJ issued a written opinion on May 10, 2006, denying benefits on the ground that plaintiff was not disabled because he could perform work that existed in significant numbers in the national economy.[5] Thereafter, plaintiff requested Appeals Council review of the ALJ's decision,[6] and on September 7, 2006, the Appeals Council concluded that no basis existed to grant review of the ALJ's decision.[7] Thus, the ALJ's May 10, 2006 determination became the final decision of the Commissioner. Plaintiff now appeals that determination.

### III. ISSUES

1. Whether substantial evidence supports the Administrative Law Judge's decision that plaintiff was not disabled under the Social Security Act.

2. Whether the decision comports with relevant legal standards.

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision denying disability or supplemental security income benefits, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[8] Substantial evidence is more than a scintilla, less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[9] It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[10]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[11] "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[12] Conflicts in the evidence are for the Commissioner to resolve.[13] Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[14]

### V. ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

The ALJ stated the issue was whether plaintiff was entitled to a period of disability and Disability Insurance Benefits under Sections 216(I) and 223(d) of the Social Security Act.[15] The ALJ defined disability

---

**4.** *Id.* at 295–348.

**5.** *Id.* at 15–22.

**6.** *Id.* at 11.

**7.** *Id.* at 5–8.

**8.** *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

**9.** *Id.*

**10.** *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988).

**11.** *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995).

**12.** *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir.2000).

**13.** *Id.*

**14.** *Martinez,* 64 F.3d at 174.

**15.** Transcript at 15.

as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that could be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[16] The ALJ noted there was the additional issue of whether the insured status requirements of Sections 216(I) and 223 of the Social Security Act had been met and found plaintiff's earnings record showed he had acquired sufficient quarters of coverage to remain insured through December 31, 2007.[17]

At the time of the decision, plaintiff was a 49–year–old male with a high school education.[18] Plaintiff's past work experience included employment as a police patrolman.[19] After explaining the five-step sequential evaluation process for determining whether an individual is disabled and noting the steps are to be followed in order,[20] the ALJ made her findings of facts and conclusions of law.[21]

To determine whether plaintiff met the criteria for disability, the ALJ determined, at the first step, that plaintiff had not engaged in substantial gainful employment activity since August 6, 2001, the amended alleged disability onset date.[22] At the second step, the ALJ considered the severity of plaintiff's impairment, or combination of impairments.[23] The ALJ found the medical evidence indicated plaintiff had medi-

cally determinable impairments of status post cervical discectomy and fusion at C4–6 and disc protrusions at T6–7 and L5–S1, impairments that are "severe" within the meaning of the Regulations.[24]

The ALJ acknowledged that one electromyogram/nerve conduction study indicated plaintiff had carpal tunnel syndrome.[25] The ALJ also stated the physical examination of plaintiff was negative for findings, such as positive Tinel's and Phalen's signs that would confirm such a diagnosis.[26] The ALJ found, given that there was no evidence that plaintiff experienced significant limitations on the use of his upper extremities, that he did not have a medically determinable impairment of carpal tunnel syndrome which constitutes more than a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.[27] Thus, the ALJ concluded plaintiff did not have a medically determinable "severe" impairment of carpal tunnel syndrome and cited to 20 C.F.R. Section 404.1521, Social Security Rulings ("SSR") 85–28, 96–3p, and 96–4p, and *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985).[28]

At the third step of the evaluation process, the ALJ found that plaintiff did not have an impairment that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.[29] The ALJ found the criteria of section 1.04,

16. *Id.*

17. *Id.*

18. *Id.* at 21.

19. *Id.*

20. *Id.* at 16–17.

21. *Id.* at 17.

22. *Id.* (citing 20 C.F.R. §§ 404.1520(b)).

23. *Id.*

24. *Id.* (citing 20 C.F.R. § 404.1520(c)).

25. *Id.* (citing *id.* at 106).

26. *Id.* (citing *id.* at 128 and 272).

27. *Id.*

28. *Id.* at 17–18.

29. *Id.* at 18 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

which pertains to disorders of the spine, was not met.[30] The ALJ acknowledged that plaintiff was status post cervical fusion, but noted the evidence demonstrated the fusion was solid and that plaintiff did not experience cervical radiculopathy.[31] Although, according to the ALJ, plaintiff had protrusions in his thoracic and lumbar spine and an electromyogram was interpreted as showing "radiculitis," [32] the ALJ found, in support of her determination, that plaintiff did not meet section 1.04 that there was no denervation and Dr. Dorothy Leong ("Dr.Leong") testified that numerous physical examinations of plaintiff failed to reveal motor, sensory, or reflex functioning loss.[33]

The ALJ found, after careful consideration of the entire record, that plaintiff had the residual functional capacity ("RFC") to lift or carry ten pounds occasionally and five pounds frequently; to "stand/walk" six hours out of an eight hour workday, and sit six hours out of an eight hour workday with the opportunity to change positions from sitting to standing every 45 minutes.[34] Further, the ALJ found plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds.[35] In addition, the ALJ found plaintiff was able to occasionally balance, but could not perform any floor to waist bending or lifting.[36] Finally, the ALJ found plaintiff was able to occasionally stoop, kneel, and crouch, but could never crawl.[37]

The ALJ found, after considering the evidence of record, that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms and limitations, but that the record as a whole did not substantiate the alleged intensity, duration and limiting effects of the symptoms.[38] The ALJ found the objective findings do not show the existence of impairments that could reasonably be expected to produce the disabling pain and attendant functional limitation plaintiff alleged.[39] The ALJ further opined that plaintiff's longitudinal treatment history, his response to treatment, and his level of daily activity did not suggest disability.[40] Thus, the ALJ found plaintiff's subjective allegations to be credible to the extent he is limited to the range of sedentary exertion mentioned above.[41]

The ALJ recognized that plaintiff had sustained neck and back injuries in a May 15, 2001 motor vehicle accident while working as a police officer for the city of Seguin, Texas.[42] In citing to a September 11, 2001 MRI of plaintiff's cervical spine,

30. *Id.*

31. *Id.*

32. *Id.* (citing *id.* at 171 and 216).

33. *Id.*

34. *Id.*

35. *Id.*

36. *Id.*

37. *Id.* (citing 20 C.F.R. § 404.1567; SSRs 83–10, 96–8p, 96–9p; and *Watson v. Barnhart,* 288 F.3d 212, 217–218 (5th Cir.2002)). In making her finding, the ALJ stated she considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96–4p and 96–7p. *Id.* The ALJ also stated she considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96–2p, 96–5p, and 96–6p. *Id.*

38. *Id.*

39. *Id.*

40. *Id.*

41. *Id.*

42. *Id.*

performed to investigate complaints of neck pain, the ALJ noted the results showed posterior disc herniations at C4–5 and C5–6.[43] When plaintiff's radiculopathic symptoms did not subsequently respond to conservative treatment, according to the ALJ, plaintiff underwent cervical disc discectomy and fusion C4–6 on March 18, 2002.[44] The ALJ determined that "fortunately" the record reflects the surgery was a success "as the fusion is solid,"[45] and added that plaintiff reported a decrease in his pain symptoms.[46] Thus, the ALJ found plaintiff's testimony of disabling neck pain radiating into his shoulders failed to account for the positive effects of treatment documented in the record[47] and was inconsistent with the objective evidence which generally failed to show neurological deficits were present even prior to the surgery.[48] The ALJ further found plaintiff's complaints of disabling neck pain and attendant function limitation to be inconsistent with his daily activities which reportedly included driving daily and about thirty miles a week, mowing his lawn weekly in the spring and summer, doing the laundry, shopping for groceries, and cooking occasionally.[49] The ALJ ex-

plained that plaintiff's ability to engage in this type and quantity of activities suggested plaintiff's pain symptoms were not as severe or as constant as he alleged and instead indicated he was not nearly as limited as he alleged himself to be.[50] The ALJ, however, in light of plaintiff's surgical history and given his other impairments, concluded that plaintiff's neck impairment contributed to his limitation to the range of sedentary exertion noted above.[51]

In further analyzing the medical record, the ALJ noted MRI studies document plaintiff had multilevel disc protrusions in the thoracic and lumbar spine with the most focal abnormalities being at the T6–7 and L5–S1 levels.[52] The ALJ further found a post discogram CT scan on plaintiff's lumbar spine, performed on July 8, 2003, revealed diffuse disc degeneration at L3–4 with mild to moderate multifactorial central spine stenosis, moderate central spinal stenosis at L4–5, and a disc bulge displacing the left S1 nerve root at the L5–S1 level.[53] The ALJ found plaintiff had received an extensive amount of conservative care for his back complaints,[54] and surgical treatment of the disc protru-

**43.** *Id.* (citing *id.* at 103).

**44.** *Id.* (citing *id.* at 147 and 148).

**45.** *Id.* at 18–19 (citing *id.* at 242 and 248).

**46.** *Id.* at 19 (citing *id.* at 190 and 239).

**47.** *Id.* (citing *id.* at 190 and 239).

**48.** *Id.* (citing *id.* at 110, 114, 119, 128, and 272).

**49.** *Id.*

**50.** *Id.*

**51.** *Id.*

**52.** *Id.* (citing *id.* at 157, 159, 160, and 162). The ALJ noted a July 2003 discogram was positive at the L5–S1. *Id.* (citing *id.* at 240).

**53.** *Id.* (citing *id.* at 155 and 221). The ALJ found electrodiagnostic testing conducted in December 2003 was interpreted as showing bilateral S1 radiculopathy. *Id.* (citing *id.* at 171 and 216). The ALJ cautioned, however, that as noted by Dr. Leong, numerous physical examinations had generally shown plaintiff's motor and sensory or reflex functioning remained intact. *Id.* (citing *id.* at 110, 114, 119, 128, 190, and 243). Further, the ALJ made such a finding despite also noting plaintiff did suffer from some loss of range of motion, in addition to tenderness to palpation, muscle spasm, and the presence of a mildly positive straight leg raising test. *Id.* (citing *id.* at 127, 178–179, and 222–223).

**54.** *Id.* (citing *id.* at 220).

sions had been discussed,[55] but he instead elected to treat the complaints with medication, suggesting, according to the ALJ, plaintiff's back pain was not as constant or severe as plaintiff alleged it to be.[56] Thus, the ALJ determined the objective findings and plaintiff's treatment history for his back condition suggest the impairment was less severe and limiting than plaintiff alleged.[57] The ALJ also found plaintiff's complaints of disabling functional limitations attendant to his condition was inconsistent with his daily activities and indicated he retained substantial functional abilities.[58] Nonetheless, given the findings above, the ALJ concluded that plaintiff's back condition, in conjunction with other impairments, limited him to a range of sedentary exertion as identified above.[59]

The ALJ acknowledged plaintiff complained of extreme constipation and extreme diarrhea as side effects to his medical therapy, but noted he also contended he had irritable bowel syndrome.[60] The ALJ found the record to contain no diagnosis of irritable bowel syndrome, but indicated constipation was a known side effect to opioid analgesics.[61] The ALJ found, however, that plaintiff reported the use of non-prescription medication to remedy the complaint, which may account for his complaint of extreme diarrhea.[62] The ALJ indicated plaintiff admitted his medications permitted him to go about his daily life and, according to the ALJ, plaintiff's daily activities appear fairly well preserved for an individual with his medical history, suggesting his medications afforded him good pain relief.[63]

The ALJ found plaintiff had a good work history.[64] The ALJ also noted plaintiff had sustained injuries that precluded return to his former work.[65] The record as a whole, according to the ALJ, indicated plaintiff remained capable of less demanding duties, such as desk work.[66]

As for the opinion evidence, the ALJ noted that Dr. Karl W. Swann, plaintiff's surgeon, opined that plaintiff was "totally and permanently disabled from all manner of work." [67] The ALJ found the opinion was not entitled to controlling weight and was not accorded any significant weight, as not only was it a non-medical vocational opinion intruding upon issues specifically reserved by regulation to the Commissioner of the Social Security Administration, it was not supported by the record as a whole as it was contrary to other substantial evidence.[68] The ALJ explained that numerous physical examinations, including those conducted by Dr. Swann, failed to reveal the neurological deficits typically found in association with debilitating spinal conditions.[69] The ALJ concluded that

---

55. *Id.* (citing *id.* at 190, 241, and 246).

56. *Id.* (citing *id.* at 100 and 239).

57. *Id.*

58. *Id.*

59. *Id.*

60. *Id.*

61. *Id.*

62. *Id.* (citing *id.* at 100).

63. *Id.*

64. *Id.* at 20.

65. *Id.*

66. *Id.*

67. *Id.* (citing *id.* at 210).

68. *Id.*

69. *Id.* The ALJ further found Dr. Swann's opinion to be inconsistent with plaintiff's daily activities and the opinions of the state agency medical consultants that plaintiff was capable of light exertion. *Id.* (citing *id.* at 202–209). The ALJ found, however, after consideration of the more recent medical evidence, including the credible testimony of Dr. Leong that plaintiff was capable of sustaining a range of sedentary exertion. *Id.*

plaintiff was capable of sustaining a range of sedentary work.[70]

The ALJ next found plaintiff had past relevant work as a police patrolman, *Dictionary of Occupational Titles* ("DOT") number 905.665–014, which is a light exertional level skilled job as generally performed in the national economy, but which plaintiff performed as a sedentary to very heavy job.[71] The ALJ reiterated that plaintiff was limited to a range of sedentary exertion and noted the vocational expert had testified that an individual with plaintiff's RFC could not perform plaintiff's past relevant work.[72] The ALJ considered the testimony of the vocational expert to be credible and consistent with the record as a whole, and therefore found plaintiff was unable to perform his past relevant work.[73] The ALJ also noted plaintiff was born on May 2, 1957, and was 44 years old on the alleged disability onset date, which is defined as a "younger individual 18–44," and at the time of the hearing was a "younger individual age 45–49." [74] The ALJ also found plaintiff had at least a high school education and was able to read and speak English.[75] Finally, the ALJ determined plaintiff had a skilled

work background and noted the vocational expert testified that plaintiff's past relevant work experience as a police patrolman was a skilled job and required the following skills: investigatory skills, communication skills, supervisory skills, report writing, and knowledge of the law and regulations.[76]

The ALJ next stated that in determining whether a successful adjustment to other work could be made, she must consider plaintiff's RFC, age, education, and work experience in conjunction with the Medical–Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2.[77] The ALJ indicated that if plaintiff could perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon plaintiff's specific vocational profile.[78] When a plaintiff cannot perform substantially all of the exertional demands of work at a given level of exertion or has non-exertional limitations, according to the ALJ, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional or nonexertional limitations.[79]

70. *Id.* The ALJ stated she also considered the impairment ratings, ranging from 19% to 40%, which were used for worker's compensation purposes. *Id.* (citing *id.* at 175, 212, 219, and 236). The ALJ acknowledged that the criteria used by the Social Security Administration to determine disability and the criteria used to assess a worker's compensation impairment rating differ markedly and that she was not bound by such a determination. *Id.* Nevertheless, the ALJ found the ratings assessed plaintiff were not inconsistent with the rationale and findings of her decision, particularly the conclusion plaintiff was limited to a range of sedentary exertion. *Id.* Accordingly, the impairment ratings were accorded weight by the ALJ to the extent they were consistent with the rationale and findings of her decision. *Id.*

71. *Id.*

72. *Id.*

73. *Id.* (citing 20 C.F.R. § 404.1565).

74. *Id.* (citing 20 C.F.R. § 404.1563).

75. *Id.* The ALJ noted plaintiff had also graduated from the police academy. *Id.* at 21.

76. *Id.* (citing 20 C.F.R. § 404.1568).

77. *Id.*

78. *Id.* (citing SSR 83–11).

79. *Id.* (citing SSRs 83–12 and 83–14). The ALJ further noted that if plaintiff has solely nonexertional limitations, Section 204.00 of the Medical–Vocational Guidelines provides a framework for decision-making. *Id.* (citing SSR 85–15).

The ALJ asked the vocational expert at the hearing whether jobs existed in the national economy for a hypothetical individual of plaintiff's age, education, work experience, and RFC, and which would require skills acquired in plaintiff's past relevant work, but no additional skills.[80] The vocational expert testified that, given all of those factors, the individual would be able to perform the requirements of representative occupations such as desk officer (DOT code 375.137–014), with approximately 10,000 jobs available in Texas and bordering states and 100,000 jobs in the national economy and a dispatcher (DOT code 379.362–010), with 5,000 jobs available in Texas and bordering states and approximately 50,000 jobs in the national economy.[81] The ALJ noted the desk officer and dispatcher jobs make use of all the aforementioned skills except supervisory skills.[82] The ALJ added, however, that the vocational expert also testified that the hypothetical individual could perform the following sedentary exertional level unskilled jobs: a surveillance system monitor (DOT code 379.367–014), with approximately 15,000 jobs in Texas and bordering states and 80,000 jobs in the national economy, as well as a telephone solicitor (DOT code 299.357–014), with approximately 100,000 jobs in Texas and 1,000,000 jobs available in the national economy.[83] The ALJ concluded that based on the testimony of the vocational expert, plaintiff had acquired work skills from past relevant work that was transferable to other occupations existing in significant numbers in the national economy.[84] Accordingly, the ALJ found that although plaintiff's additional limitations did not allow him to perform a full range of sedentary work, considering plaintiff's age, educational background, and transferrable work skills, plaintiff was not under a "disability" as defined in the Social Security Act from May 15, 2001, through the date of her decision.[85]

On February 2, 2007, plaintiff filed a brief requesting the Court to reverse the Commissioner's erroneous decision or remand the case for a new hearing.[86] Specifically, plaintiff claims the ALJ's decision is not supported by substantial evidence because the ALJ failed to apply the proper legal standards in finding plaintiff's carpal tunnel syndrome to be a non-severe impairment, erred in rejecting plaintiff's treating physician's opinion, and failed to apply the proper legal standards in evaluating plaintiff's credibility.[87] On March 14, 2007, the Commissioner filed a responsive brief, arguing, in brief, that the ALJ's decision is supported by substantial evidence and was decided under the correct legal standards.[88] On March 30, 2007, plaintiff filed a reply brief.[89]

After a thorough review of the parties' contentions, the administrative record, and the applicable law, the Court recommends the Commissioner's decision be affirmed because the ALJ's decision denying plaintiff benefits is supported by substantial

80. *Id.*

81. *Id.*

82. *Id.*

83. *Id.* The ALJ found, pursuant to SSR 00–4p, that the vocational expert's testimony was consistent with the information contained in the DOT. *Id.*

84. *Id.*

85. *Id.* at 21–22. The ALJ stated her decision was appropriate under the framework of Medical–Vocational Rule 201.22. *Id.* at 22.

86. Docket no. 9 at 15.

87. *Id.* at 9–14.

88. Docket no. 10.

89. Docket no. 13.

evidence and comports with the relevant legal standards.

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in his brief.

### A. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[90] Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive supplemental security income.[91] The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[92] A person shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.[93]

### B. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[94] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[95] The first step involves determining whether the claimant is currently engaged in substantial gainful activity. If so, the claimant will be found not disabled regardless of his medical condition or his age, education, and work experience. The second step involves determining whether the claimant's impairment is severe. If it is not severe, the claimant is deemed not disabled. In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments. If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, and work experience. If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work. If she can still do this kind of work, she is not disabled. If she cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities and his age, education, and work experience, to do other work. If she cannot do other work, she will be found to be disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[96]

---

**90.** 42 U.S.C. § 423(a)(1) (1995).

**91.** 42 U.S.C. § 1382(a).

**92.** 42 U.S.C. § 1382c(a)(3)(A).

**93.** 42 U.S.C. § 1382c(a)(3)(B).

**94.** 20 C.F.R. §§ 404.1520.

**95.** *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995).

**96.** *Id.* at 564.

Once she has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that claimant is capable of performing.[97] If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work.[98]

## C. Plaintiff's Claims In Appealing The ALJ's Decision:

### 1. Whether the ALJ failed to give sufficient weight to all the medical evidence

Plaintiff contends the ALJ ignored the fact that plaintiff had a severe impairment of carpal tunnel syndrome when she determined plaintiff's severe impairments.[99] Plaintiff cites to the records of Dr. Paul T. Geibel, who "suspected" carpal tunnel syndrome, and noted plaintiff "has some evidence of potential carpal tunnel-like symptoms."[100] Plaintiff further claims the Fifth Circuit presumes "the incorrect standard in severity determinations was applied where the adjudicator failed to reference the *Stone* decision, or provide an express statement that adheres to the standard set forth in the opinion."[101] Plaintiff argues the ALJ impermissibly substituted her own medical conclusion for that of plaintiff's treating physicians, in-

cluding Dr. Geibel.[102] Plaintiff also argues the ALJ did not consider the combined effects of plaintiff's impairments in determining whether he was disabled.[103]

Contrary to plaintiff's assertion, the ALJ properly applied the standard established in the Fifth Circuit to determine that plaintiff's alleged carpal tunnel syndrome did not qualify as a severe impairment.[104] Although plaintiff emphasizes a 2001 diagnosis of "entrapment neuropathy of both median nerves at the wrist consistent with carpal tunnel syndrome," the evidence relating to a time significantly prior to when plaintiff protectively filed for benefits is not particularly relevant.[105] Even in considering evidence dated back to 2001, however, the record contains no medical evidence showing specific functional limitations resulting from carpal tunnel syndrome.[106] In November 2002, Dr. Robert G. Johnson reported that plaintiff's upper extremities were normal, and the state agency physicians indicated plaintiff did not have nay manipulative limitations.[107] Plaintiff also indicated he was "still able to shift gears in truck."[108] Given there was substantial evidence showing plaintiff did not experience limitations on the use of his upper extremities, the ALJ properly determined that plaintiff's carpal tunnel syndrome did not qualify as a severe impairment according to the standard established in *Stone.*

97. *Anderson v. Sullivan,* 887 F.2d 630, 632 (5th Cir.1989).

98. *Id.* at 632–633.

99. Docket no. 9 at 9–11.

100. *Id.* at 9.

101. *Id.* at 10.

102. *Id.*

103. *Id.* at 10–11.

104. Transcript at 16–18.

105. 20 C.F.R. § 404.1512(d) (the Commissioner will develop a claimant's complete medical history for at least the twelve months preceding the month in which the claimant files his or her application). In this case, plaintiff protectively filed for benefits on April 20, 2004. Transcript at 59.

106. *Id.* at 101–286.

107. *Id.* at 205 and 243.

108. *Id.* at 88.

The Commissioner's regulations provide that in determining whether a claimant has an impairment or impairments of sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, the combine of effect of all impairments is considered without regard to whether any of the claimant's impairments, if considered separately, would be of sufficient severity.[109] The ALJ correctly followed the procedure in this case as she recognized she "must consider all of the claimant's impairments, including impairments that are not severe."[110] The ALJ properly followed the sequential evaluation process to the fifth step, and correctly concluded that carpal tunnel syndrome would not further limit plaintiff's ability to perform less than a full range of sedentary work.[111]

### 2. Whether the ALJ erred as a matter of law when she rejected a treating physician's opinion

Plaintiff next argues the ALJ erred as a matter of law when she rejected the opinion of Dr. Karl W. Swann, who on July 27, 2004, stated "based on the totality of his symptoms, [and] the extent of his disc abnormalities . . . Mr. Franzen is totally and permanently disabled from performing all manner of work."[112] Plaintiff maintains the ALJ's rejection of Dr. Swann's opinion was not supported by good cause.[113] Plaintiff contends the decision fails to adequately explain the basis for

according little weight to Dr. Swann's opinion and as such, the ALJ committed reversible error by failing to accord the treating physician's opinion considerable weight.[114]

Plaintiff specifically cites to *Newton v. Apfel,*[115] and in that case, the Fifth Circuit held that absent reliable medical evidence from a treating or examining physician controverting the plaintiff's treating physician, an ALJ may reject or give little weight to the treating physician's opinion only if the ALJ performs a detailed analysis of the factors listed in § 404.1527(d).[116] In sum, the relevant factors under § 404.1527(d) are:

1. The length of the treatment relationship and the frequency of examination;

2. The nature and extent of the treatment relationship;

3. The relevant evidence such as medical signs and laboratory findings to support the opinions;

4. The opinion's consistency with the record as a whole;

5. Whether the medical opinion is given by a specialist about medical issues related to his or her area of specialty; and

6. Any other relevant factors that tend to support or contradict the opinion.[117]

---

**109.** 20 C.F.R. § 404.1523.

**110.** Transcript at 16–17.

**111.** *Id.* at 16–22. *See also Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir.1987) (when the ALJ proceeds past step two, the case will not turn on whether a severe impairment was found).

**112.** Docket no. 9 at 11.

**113.** *Id.* at 12.

**114.** *Id.*

**115.** 209 F.3d 448 (5th Cir.2000).

**116.** *Id.* at 456–457.

**117.** *Id.;* 20 C.F.R. § 404.1527(d) (pertaining to disability benefits claimants); *see also id.* § 416.927(d) (pertaining to SSI benefits claimant); SSR 96–2p (discussing SSA's regulations on giving controlling weight to a treating physician's opinion).

It should be noted, however, that *Newton* is inapplicable when there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.[118] Nor does it apply when the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion.[119] Also, *Newton* applies to a medical opinion rendered by a treating physician, not to a legal opinion that the claimant is disabled or unable to work.[120]

The ALJ specifically stated in her opinion that she considered opinion evidence in accordance with the requirements of 20 C.F.R. Section 404.1527 and SSRs 96–2, 96–5p, and 96–6p, and the ALJ's citation to these authorities indicates she was aware of the relevant legal standard and applied them. It is well settled in the Fifth Circuit that the ALJ has the sole responsibility to determine whether a claimant is disabled,[121] and is entitled to determine the credibility of the medical experts, as well as lay witnesses, and weigh their opinions accordingly.[122] Indeed, as already noted, this Court is not to re-weigh the evidence or resolve conflicts in the evidence. It is also well-settled that the ALJ must develop the facts fully and fairly when considering a claim for disability benefits.[123] If the ALJ does not satisfy this obligation, the ALJ's decision is not substantially supported.[124] The ALJ in this case properly developed the facts fully and fairly and ultimately found Dr. Swann's opinion to be inconsistent with the record as a whole, and specifically with plaintiff's activities of daily living, the opinions of the state agency physicians, the medical expert that testified at the hearing, and medical records from Dr. Pete Nguyen.[125] The ALJ thus properly determined not to accord controlling weight to Dr. Swann's opinion because it was inconsistent with the record as a whole.[126] Because the ALJ's decision is supported by substantial evidence, the decision should be affirmed.

### 3. Whether the ALJ failed to apply the proper legal standards in evaluating plaintiff's credibility

Finally, plaintiff argues the ALJ did not properly evaluate the credibility of Mr. Franzen.[127] Plaintiff maintains the ALJ's failure to indicate the credibility choices made and the basis for the choices requires "reversal and remand."[128] Plaintiff also takes issue with the ALJ electing not to discuss in her opinion the testimony of Mr. Franzen's wife concerning her observations.[129] Finally, the ALJ argues the ALJ failed to follow the required analysis,

118. *Newton,* 209 F.3d at 458.

119. *Id.*

120. *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003).

121. 20 C.F.R. § 404.1527(e)(1).

122. *Griego,* 940 F.2d at 945; *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990) (Commissioner will consider doctor's opinion but determination of disability rests solely with Commissioner).

123. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995); *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984).

124. *Id.*

125. Transcript at 20.

126. *Id.;* 20 C.F.R. § 404.1527(d); and SSR 96–2p.

127. Docket no. 9 at 12–14.

128. *Id.* at 12.

129. *Id.* at 14.

and as such the case should be remanded for application of the proper legal standards in determining plaintiff's credibility.[130]

The ALJ determined that plaintiff retained the capacity for work that exists in significant numbers in the national economy.[131] The ALJ found plaintiff retained the RFC ("RFC") to lift or carry ten pounds occasionally and five pounds frequently; to "stand/walk" six hours out of an eight hour workday, and sit six hours out of an eight hour workday with the opportunity to change positions from sitting to standing every 45 minutes.[132] Further, the ALJ found plaintiff could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds.[133] In addition, the ALJ found plaintiff was able to occasionally balance, but could not perform any floor to waist bending or lifting.[134] Finally, the ALJ found plaintiff was able to occasionally stoop, kneel, and crouch, but could never crawl.[135] These limitations indicate the ALJ properly considered the medical evidence of record and plaintiff's testimony in regard to plaintiff's subjective complaints of pain. Additionally, the ALJ properly determined plaintiff's activities of daily living were inconsistent with the level of disabling pain alleged by plaintiff.[136]

In making her finding, the ALJ stated she considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96–4p and 96–7p.[137] The vocational expert in this case testified that a person with plaintiff's age, education, work experience, and limitations, could perform the jobs of desk officer, dispatcher, surveillance system monitor, and telephone solicitor, jobs that collectively account for approximately 1,330,000 positions in the national economy.[138] This testimony provides substantial support for the ALJ's decision that plaintiff could perform work that existed in significant numbers in the national economy and was, therefore, not disabled within the meaning of the Act.

"The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." [139] "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." [140] Given the ALJ's decision was properly based on a thorough review of both the objective and subjective evidence, it should be affirmed.

## D. Conclusion

In sum, the Court cannot conclude that the ALJ erred in determining that plaintiff could perform a significant range of work existing in the national economy after recognizing that plaintiff did have severe impairments that resulted in various limitations. The ALJ's handling of the case is

130. *Id.*

131. Transcript at 18.

132. *Id.*

133. *Id.*

134. *Id.*

135. *Id.*

136. *Id.* at 18–19.

137. *Id.*

138. *Id.* at 21.

139. *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir.1983) (citing *Laffoon v. Califano,* 558 F.2d 253, 255 (5th Cir.1977)).

140. *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir.1990).

supported by substantial evidence and the ALJ's decision comports with relevant legal standards. Even if the ALJ did not discuss all the evidence in the record to plaintiff's satisfaction, the ALJ is not required to discuss all supporting evidence or all the evidence she rejected.[141] The ultimate determination of disability is a legal opinion reserved to the ALJ. Because the ALJ's determination is supported by more than a scintilla of evidence and was reached through applying proper legal standards, her findings are conclusive. The Court is not permitted to substitute its own judgment for the ALJ's.[142]

### E. Plaintiff's Motion to Remand

As an alternative to rendering judgment for plaintiff, plaintiff asks this Court to remand his case for another hearing.[143] The Fifth Circuit has held that a court may remand a case "to the Secretary 'upon showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"[144] Plaintiff has presented no new evidence supporting his request for a remand, nor has the Court otherwise determined that a remand would be appropriate. Accordingly, plaintiff's request for a remand should be denied.

### VII. RECOMMENDATION

In sum, because the ALJ's determination denying plaintiff benefits is supported by substantial evidence and correctly applies the relevant legal standards, it is recommended that the Commissioner's decision be **AFFIRMED**; plaintiff's motion

for remand [145] be **DENIED**; and judgment should be entered for defendant and against plaintiff, each side to bear its own costs.

### VIII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED.R.CIV.P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within 10 days after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[146] Additionally, a party's failure to

---

141. *James J. Flanagan Stevedores, Inc. v. Gallagher,* 219 F.3d 426, 430 (5th Cir.2000) (citing *Falco,* 27 F.3d at 163).

142. *Chaparro v. Bowen,* 815 F.2d 1008, 1011 (5th Cir.1987).

143. Docket no. 9 at 15.

144. *Haywood v. Sullivan,* 888 F.2d 1463, 1471 (5th Cir.1989) (citing 42 U.S.C. § 405(g)).

145. Docket no. 9 at 15.

146. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[147]

**ORDERED, SIGNED** and **ENTERED** this 23rd day of April, 2007.

**147.** *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1428 (5th Cir.1996).